(No. 71786.—

BRUCE M. ABRAHAMSON, Appellee, v. THE ILLINOIS DEPARTMENT OF PROFESSIONAL REGULATION *et al.*, Appellants.

*Opinion filed November 19, 1992.*

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Ann Plunkett-Sheldon and John A. Morrissey, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Edward L. Foote, of Winston & Strawn, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Bruce Abrahamson applied to appellant, the Illinois Department of Professional Regulation (Department), for a license to practice medicine in this State. The Department denied the application.

On administrative review, the circuit court of Cook County reversed the Department's decision and ordered the Department to issue a medical license to Abrahamson. The appellate court affirmed. (210 Ill. App. 3d 354.) This court allowed the Department's petition for leave to appeal (134 Ill. 2d R. 315(a)), and we now reverse.

## BACKGROUND

The record contains the following pertinent facts. In January 1981, Abrahamson passed the examination administered by the Educational Commission for Foreign Medical Graduates (ECFMG). In 1985, he passed the FLEX examination, the passage of which is a licensing

requirement in Illinois. See Ill. Rev. Stat. 1987, ch. 111, par. 4400—9(E).

## I. APPLICATION

On June 6, 1986, Abrahamson applied to the Department for a license to practice medicine in this State. After receiving the application, the Department questioned two of Abrahamson's answers.

On November 24, 1986, representatives of the Department held an informal conference with Abrahamson and his attorney. Part B, question 6, of the application required Abrahamson to list the occupational schools he had attended. He listed one school—the Autonomous University of Juarez, Mexico (Juarez). However, at the informal conference, Abrahamson revealed that he had been enrolled at the Indiana University School of Medicine (Indiana University) while also enrolled at Juarez. Part D, question 2, of the application required Abrahamson to acknowledge whether he had ever been denied a license, permit, or privilege of taking an examination by any licensing authority. Abrahamson answered "No." However, at the informal conference, Abrahamson revealed that: (1) he had applied for medical licenses in Indiana, South Dakota, and Pennsylvania, and (2) none of those States granted him a license.

The next day, Abrahamson submitted an "addendum" to his original application. In this submission, Abrahamson proffered reasons for his failure to disclose the required information in the above-mentioned areas. Regarding his dual enrollment at Juarez and Indiana University, Abrahamson believed that the question referred only to schools from which he had received a degree. He explained that he did not list Indiana University because he did not receive a degree from that school. In the addendum, Abrahamson also included a chronological summary of the dual enrollment. He re-

counted the dates of his enrollment at Indiana University, the courses that he took there, and his performance in those courses.

In the addendum, Abrahamson also explained his failure to disclose his applications for medical licenses in three other States. He recounted the circumstances that surrounded each license application. He essentially concluded that each application had not been formally considered and denied. Thus, Abrahamson did not list them.

## II. ADMINISTRATIVE PROCEEDING

On January 14, 1987, Abrahamson appeared before the Illinois Medical Licensing Board (Board). He essentially restated the information contained in the addendum. At the close of the hearing, the Board indicated that it would need more time to render a decision on the application.

On April 29, 1987, the Department notified Abrahamson of its intent to deny his application. The Department intended to deny the application for the following reasons:

"1. You have made false statements to the Department in connection with your application.

2. You have failed to, in fact, meet the educational requirements of the Medical Practice Act.

3. You caused to be printed a false and fraudulent transcript of credit hours from Indiana University Medical School capable of defrauding the public and this Department."

On August 5, 1987, the Department and Abrahamson deposed Ruben Dominguez. Dominguez was a printer at PIP Press in Las Crucas, New Mexico. PIP Press printed business forms, envelopes, letterheads and the like. Dominguez identified a transcript of courses taken and grades received at Indiana University; the transcript bore Abrahamson's name. The transcript was printed at

his shop. Dominguez could not remember which employee actually printed the document or exactly when it was printed. However, he was certain that the transcript was printed at his shop for Abrahamson. Dominguez did not know whether Abrahamson actually received the document.

Further, on the day the transcript was printed, Dominguez discussed the document with Ruth Anderson. Anderson was Dominguez's neighbor and an administrative assistant with the Dominican Medical Society. On the following day, Dominguez gave copies of the false transcript to Anderson. In February 1987, Dominguez was questioned about the transcript by Robert Hewson, a Department investigator. Hewson showed Dominguez a copy of the transcript, which Dominguez identified as having been printed in his shop. Hewson also showed Dominguez photographs of six men. Dominguez identified Abrahamson's photograph as that of the man who commissioned the transcript.

## A. September 9, 1987, Hearing

On September 9, 1987, the Board held another hearing on Abrahamson's application for a medical license. Hewson testified regarding the false Indiana University transcripts. Anderson mailed her copies of the false transcript to Indiana University. In turn, the university mailed the transcripts to the Department with a cover letter stating that they were not official. A discussion with the director of Juarez led Hewson to Anderson, who led Hewson to Dominguez. Additionally, over Abrahamson's hearsay objection, Hewson related statements by the director of Juarez that could be construed to mean that Abrahamson used the false transcript to obtain academic credit at Juarez.

Abrahamson denied that he had commissioned the printing of the Indiana University transcript. However,

he admitted that the date on the transcript corresponded to the date he entered Indiana University. Abrahamson submitted an affidavit from the director of Juarez, in which the director testified that Abrahamson never used the false transcript to obtain academic credit at Juarez. Further, it was undisputed that Abrahamson never tendered the false transcript to the Department in order to obtain an Illinois medical license.

Abrahamson was again questioned on his dual enrollment at Juarez and Indiana University. At the January 14 hearing, Abrahamson testified that from November 1979 through February 1980, he attended "very few classes" and "may have taken one or two tests" at Indiana University. At the September 9 hearing, Abrahamson was asked whether he attended a particular class on 12 specific dates during this period. Abrahamson could not remember whether he had been present.

Hewson, during his testimony, proffered an attendance report for the class in question. The report showed that Abrahamson, during this period, was present at 12 out of 13 scheduled laboratory sessions and was present on all test dates, except the final test. Hewson received the report from a university professor. Hewson did not know how the professor took attendance and did not see any original records from which the report had been prepared. The report was admitted into evidence over Abrahamson's hearsay objection.

Abrahamson was questioned also regarding statements he had made in various other documents. Abrahamson's application to take the ECFMG test stated that he had received a Bachelor of Arts degree (B.A.) from Indiana University. However, Abrahamson admitted that he did not receive a degree from Indiana University and knew this when he completed the ECFMG application.

In addition, Abrahamson's Indiana medical license application stated that Abrahamson had received a B.A. from Indiana University. Also, his Pennsylvania medical license application stated that he had received a Bachelor of Science degree (B.S.) from Indiana University. Abrahamson explained that he contacted the registrar's office at Indiana University and was informed that he had accrued "enough hours as an undergraduate to be eligible for a degree."

## B. Findings and Conclusions

On February 10, 1988, the Board voted unanimously to recommend that the Department director deny Abrahamson's application. The Board based its recommendation on Abrahamson's lack of "good moral and ethical judgment."

On March 9, 1988, the Board met again to establish its findings of fact. In its written recommendation, the Board found that Abrahamson was "not credible and unworthy of belief." However, the Board found that Hewson, Dominguez, an Indiana University assistant dean, and an Indiana University professor of medicine each was "credible and worthy of belief."

In its recommended findings 12 through 16, the Board concluded that the evidence clearly and convincingly showed: (1) Abrahamson "caused a false and fraudulent transcript of courses, purportedly completed at Indiana University School of Medicine, to be printed"; (2) Abrahamson's explanation on the issue of dual enrollment at Juarez and Indiana University was "inconceivable"; (3) Abrahamson, in pursuit of an Illinois medical license, "made numerous misstatements of material facts regarding his academic credentials, schools and periods of actual attendance, degrees conferred, applications for licensure in other jurisdictions and his involvement in the production of false and fraudulent academic credentials";

(4) Abrahamson's "failure to be forthright and truthful while supplying information to this Board demonstrates a complete lack of moral character"; and (5) Abrahamson's "involvement in the fraudulent production of academic credentials demonstrates a complete lack of proper ethical judgment."

On September 11, 1988, the Department director accepted the Board's recommendation and denied Abrahamson's application. However, the director permitted Abrahamson to reapply for a medical license after two years from the date of the order.

### III. ADMINISTRATIVE REVIEW

On October 17, 1988, Abrahamson filed a complaint in the trial court seeking administrative review of the Department's denial. On August 29, 1989, the trial court reversed the Department's decision and ordered the department to issue a medical license to Abrahamson.

The trial court reasoned that the Department's conclusion that Abrahamson lacked good moral character was based on the combination of findings regarding dual enrollment and misstatements of material facts in pursuit of his Illinois medical license. The trial court concluded that the Board's findings in these areas were "not of a magnitude that would support the finding that [Abrahamson] lacked good moral character, and for that reason, and without that finding, [Abrahamson] is qualified and this hearing would have resulted in a different decision."

The appellate court affirmed the trial court's judgment. (210 Ill. App. 3d 354.) The Department appeals.

### OPINION

### I. STANDARD OF REVIEW

We explain at the outset our standard of review. Section 41 of the Medical Practice Act of 1987 (Ill. Rev.

Stat. 1987, ch. 111, par. 4400—41) provides that judicial review of the Department's decision be in accordance with the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*). The Administrative Review Law provides that our review extends to all questions of law and fact presented by the entire record. The statute limits our review to the record before us; we may not hear new or additional evidence. The statute additionally mandates that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." Ill. Rev. Stat. 1987, ch. 110, par. 3—110.

Courts have construed these statutory provisions to mean that, on administrative review, it is not a court's function to reweigh the evidence or make an independent determination of the facts. Rather, the court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391; *Davern v. Civil Service Comm'n* (1970), 47 Ill. 2d 469, 471; *Middleton v. Clayton* (1984), 128 Ill. App. 3d 623, 630.) An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Whelchel v. Edgar* (1990), 195 Ill. App. 3d 406, 409; *Burke v. Board of Review, Illinois Department of Labor* (1985), 132 Ill. App. 3d 1094, 1100; *Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 867.

The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. (*Petraitis*, 31 Ill. App. 3d at 867.) The reviewing court may not substitute its judgment for that of the administrative agency. (*Davern*, 47 Ill. 2d at 472.) If the record contains evidence to support the agency's decision, it should be affirmed. *Commonwealth Edison Co. v.*

*Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 467; *Wegmann v. Department of Registration & Education* (1978), 61 Ill. App. 3d 352, 359.

## II. ANALYSIS

In affirming the trial court's reversal of the Department's order, the appellate court held as follows. First, Abrahamson was denied due process. (210 Ill. App. 3d at 364-70.) Second, all but one of the Board's findings of fact were against the manifest weight of the evidence. (210 Ill. App. 3d at 371-72.) Third, although one finding of fact was supported by the evidence, Abrahamson "had been punished enough." Thus, the appellate court concluded that Abrahamson deserved the immediate receipt of his medical license. (210 Ill. App. 3d at 373-75.) We conclude that each of the appellate court's holdings constituted error.

### A. Due Process

The appellate court held that the administrative proceeding denied Abrahamson due process. In support of this holding, the appellate court made several findings.

### 1. *Good Moral Character*

The appellate court, addressing what it considered to be "a misconception of law" on the part of at least one Board member and the Board attorney, interpreted the statutory requirement of "good moral character" in an Illinois medical license application. (Ill. Rev. Stat. 1987, ch. 111, par. 4400—9(B)(1).) Abrahamson argued before the Board and the trial court, as well as in his brief before this court, that once an Illinois medical license applicant acquires the prescribed education and training, and passes the required examinations, then that is sufficient for the granting of the license.

The appellate court, noting the statutory requirement of good moral character, found as follows:

> "An applicant for a medical license who has graduated from an accredited medical school and has passed all preliminary tests imposed by the statute should be entitled to a medical license unless it may be shown that he is lacking in 'good moral character.' ***
>
> We judge that the burden of proof should be on the Department to show that plaintiff [Abrahamson] is lacking 'good moral character.' " 210 Ill. App. 3d at 369.

Section 9 of the Medical Practice Act of 1987 prescribes what a person must do to apply for an Illinois medical license. The applicant must: use the Department's application forms; designate his or her professional school and the type of medicine he or she intends to practice; pay the required fees to the Department; and pass the requisite examinations. Ill. Rev. Stat. 1987, ch. 111, pars. 4400—9(A), (C), (D), (E).

Additionally, the legislature included subsection (B) with section 9. Section 9(B) states in pertinent part that each applicant for a medical license shall:

> "(B) Submit evidence satisfactory to the Department that the applicant:
>
> (1) Is of good moral character. In determining moral character under this section, the Department may take into consideration whether the applicant has engaged in conduct or activities which would constitute grounds for discipline under this Act. ***
>
> (2) Has the preliminary and professional education required by this Act;
>
> (3) Is a citizen of the United States or a lawfully admitted alien;
>
> (4) Is physically, mentally and professionally capable of practicing medicine with reasonable judgment, skill and safety." Ill. Rev. Stat. 1987, ch. 111, par. 4400—9(B).

Abrahamson and the appellate court acknowledge that subsections (A), (C), (D), and (E) are requirements

for an Illinois medical license and that the applicant bears the burden of satisfying those requirements. Indeed, Abrahamson and the appellate court acknowledge that subsections (B)(2), (B)(3), and (B)(4) are also license requirements that the applicant must satisfy. However, in the midst of all of these license requirements that the applicant must satisfy, the appellate court held that an applicant should be entitled to a medical license unless the Department shows that he or she lacks the requirement of subsection (B)(1), *i.e.*, good moral character. 210 Ill. App. 3d at 369.

The appellate court's interpretation of section 9 of the Act ignored the plain language of section 9(B)(1). The primary rule of statutory interpretation is that a court should ascertain and give effect to the intention of the legislature. The legislative intent should be sought primarily from the language used in the statute. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84.) The statute should be evaluated as a whole; each provision should be construed in connection with every other section. (*Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 81.) "Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature." *Sheahen*, 45 Ill. 2d at 84.

Applying these principles to the present case, we conclude that the appellate court's interpretation of section 9 of the Act cannot stand. The legislature clearly has the duty to require that medical license applicants possess good moral character. Further, by section 9(B)(1) of the Act, the legislature requires a medical license applicant to satisfy the Department that he or she has good moral character. (Ill. Rev. Stat. 1987, ch. 111, par. 4400—9(B)(1).) The legislature could not have made its intent any plainer.

"When permissible under the Constitution, statutes should be interpreted and applied in the manner in which they are written. They should not be re-written by a court to make them consistent with the court's idea of orderliness and public policy." (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 220.) We hold that the requirement of good moral character prescribed by section 9(B)(1) of the Act is as much of a requirement for an Illinois medical license as the other requirements prescribed by that section. Further, the applicant bears the burden of establishing his or her good moral character with the other statutory requirements, from the time of his or her application to the granting of the license. See 70 C.J.S. *Physicians & Surgeons* §19(a), at 400 (1987).

## 2. *Other Findings*

The appellate court made several additional findings in support of its holding that the administrative proceeding denied Abrahamson due process. The findings involved procedural aspects of due process.

We note that an administrative proceeding is governed by the fundamental principles and requirements of due process of law. However, due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 51; *Telcser v. Holzman* (1964), 31 Ill. 2d 332, 339.) "We have held that procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding ***." (*Telcser*, 31 Ill. 2d at 339.) We further note our agreement with the appellate court, which held that, on administrative review, a court "has a duty to examine the procedural methods employed at the administrative hearing, to insure that a fair and impartial pro-

cedure was used." *Middleton*, 128 Ill. App. 3d at 630, citing *Lloyd A. Fry Roofing Co. v. Pollution Control Board* (1974), 20 Ill. App. 3d 301, 310.

The appellate court determined that Abrahamson was denied procedural due process because the September 9, 1987, hearing and at least one of the Board's findings went beyond the charges contained in the Department's April 29, 1987, notice to deny. 210 Ill. App. 3d at 370, 372.

We disagree. It is settled that the charges or complaint in an administrative proceeding need not be drawn with the same precision, refinements, or subtleties as pleadings in a judicial proceeding. Rather, the charge in an administrative proceeding need only reasonably advise the respondent as to the charges so that he or she will intelligently be able to prepare a defense. *Dharmavaram v. Department of Professional Regulation* (1991), 216 Ill. App. 3d 514, 530; *Ballin Drugs, Inc. v. Department of Registration & Education* (1988), 166 Ill. App. 3d 520, 526; *Strickland v. Department of Registration & Education* (1978), 60 Ill. App. 3d 1, 6.

In the present case, the Department informed Abrahamson that his application would be denied because, *inter alia*, he made false statements to the Department in connection with his application, and because he caused to be printed the false Indiana University transcript. We conclude that this notice reasonably informed Abrahamson of the charges against him, and anticipated all of the Board's recommended findings. Thus, we hold that Abrahamson was not denied due process in this regard.

The appellate court additionally determined that Hewson's testimony regarding his conversation with the director of Juarez, and the Indiana University attendance report, were inadmissible hearsay. The appellate court concluded that "[b]ecause the [hearsay] evidence was directed to the question of [Abrahamson's] credibil-

ity upon which the Board's entire case relied, it was prejudicial and would justify a new hearing." 210 Ill. App. 3d at 364.

We disagree. As the appellate court has held:

> "Generally, hearsay evidence is not admissible in an administrative proceeding. [Citation.] However, where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error." (*Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 501.)

For reasons which follow later in this opinion, we conclude that the record contains competent evidence that supports the Department's decision. Thus, we hold that the admission of this hearsay evidence did not deny Abrahamson due process.

The appellate court also determined that the September 9, 1987, hearing denied Abrahamson due process because it "became both accusatorial and inquisitorial and personally insulting to [Abrahamson]." (210 Ill. App. 3d at 366.) During the hearing, one Board member and the Board attorney each made a remark that challenged Abrahamson's veracity. The same Board member also questioned defendant on the role of his mother, an advisor to the Indiana University board of trustees, in his enrollment at Indiana University. (210 Ill. App. 3d at 366-67.) The appellate court concluded that "the judges became both investigators and prosecutors. The hearing deteriorated into an unfair hearing and would justify a reversal and remandment for a new hearing." 210 Ill. App. 3d at 370.

It is settled that an administrative hearing is not a partisan hearing with the agency on one side arrayed against the individual on the other. Rather, it is an administrative investigation instituted for the purpose of ascertaining and making findings of fact. (*Fleming v. Il-*

*linois Commerce Comm'n* (1944), 388 Ill. 138, 147; *Goranson*, 92 Ill. App. 3d at 500.) A fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence. (*Goranson*, 92 Ill. App. 3d at 501, citing *Lakeland Construction Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 1036, 1040.) Further, "[w]ithout a showing to the contrary, State administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' [Citations.]" *Scott*, 84 Ill. 2d at 55.

After carefully reviewing the record, we disagree with the appellate court's finding. Of course, we agree with Abrahamson that the remarks of which he complains were irrelevant. However, they were only three irrelevant remarks out of a lengthy administrative proceeding. We hold that the September 9 hearing afforded Abrahamson due process.

Lastly, Abrahamson argued before this court that he was denied due process because most of the Board members who signed the March 9, 1988, recommended findings of fact did not actually hear the live testimony. Abrahamson argues that Board members who did not observe either himself or the other witnesses cannot judge the credibility of those persons.

We disagree. It is settled that, absent express statutory language to the contrary, agency members making the final decision need not be present when the evidence is taken, so long as they review the record of proceedings. (*Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 128.) Further, we agree with the appellate court, which has applied these principles to administrative proceedings under the Act. The court has specifically held that it is sufficient if even only one Board member listened to the live testimony. Procedural due

process is afforded where the absent Board members reviewed the transcript before making findings and recommendations. (*Bruns v. Department of Registration & Education* (1978), 59 Ill. App. 3d 872, 875-76.) In the present case, the Board stated in its recommended findings that it reviewed the transcripts of all of the hearings, in addition to the other evidence. We hold that Abrahamson was afforded due process of law.

## B. Manifest Weight of the Evidence

The Department found that Abrahamson made "numerous misstatements of material facts" in the pursuit of an Illinois medical license. The appellate court focused on three instances of Abrahamson's misstatements. First, Abrahamson stated on his Illinois medical license application that he was enrolled only at Juarez. However, Abrahamson later stated in his addendum that he was also enrolled at Indiana University. Second, Abrahamson stated on his license application that he had never been denied a license or privilege of taking a license examination by any licensing authority. However, Abrahamson later stated in his addendum that he had unsuccessfully applied for medical licenses in Indiana, Pennsylvania, and South Dakota. Third, Abrahamson also stated in his application to take the ECFMG test and in his Indiana medical license application that he received a degree from Indiana University. However, Abrahamson subsequently stated during the administrative proceeding that he never received a degree from Indiana University and knew that he did not when he completed those forms.

The appellate court held that the Department's finding was against the manifest weight of the evidence. The appellate court acknowledged that Abrahamson made misstatements. However, the court noted that Abrahamson was denied a license not because he committed these

acts, but rather because *he failed to report these acts to the Department.* In other words, if he had reported these acts to the Department in the first place, they would not have been grounds for the license denial. The court further noted that Abrahamson subsequently *did* report these acts in his addendum and testimony during the administrative proceeding. Thus, the court reasoned, although Abrahamson committed misrepresentations in connection with his Illinois medical license, they were not *material* misrepresentations. 210 Ill. App. 3d at 371-72.

We cannot accept this reasoning. Section 9(B)(1) of the Act states that the Department, in determining a medical license applicant's moral character, may consider whether the applicant has committed any acts that would be grounds for discipline under the Act. (Ill. Rev. Stat. 1987, ch. 111, par. 4400—9(B)(1).) Section 22 of the Act lists grounds for discipline under the Act. Section 22(A)(5) provides as a ground for discipline "[e]ngaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public." Section 22(A)(9) provides as a ground "[f]raud or misrepresentation in applying for, or procuring, a license under this Act." (Ill. Rev. Stat. 1987, ch. 111, pars. 4400—22(A)(5), (A)(9).) Further, the Department's regulations provide that in determining what constitutes dishonorable, unethical, or unprofessional conduct, the Board shall consider the applicant's "[m]isrepresenting as to educational background, training, credentials." 68 Ill. Adm. Code §1290.35(a)(9) (Supp. 1988).

The Department found that Abrahamson's misrepresentations violated these prohibitions. Of course, a court of review is not bound by an administrative agency's interpretation of a statute. (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361.) However, courts

will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. Such an interpretation expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that agencies can make informed judgments upon the issues, based on their experience and expertise. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53.

We conclude that the Department's interpretation of the Act deserves substantial weight and deference. The legislature placed in the Licensing Board all of the Department's powers or duties with respect to licensure. (Ill. Rev. Stat. 1987, ch. 111, par. 4400—8(F).) The Board is charged with the initial application of the statutory proscriptions, not the courts. The Board's interpretation of section 9 of the Act deserved judicial deference.

We note that the Department's conclusion accords with this issue as applied to the legal profession. It is settled that the failure of a law license applicant to fully and accurately complete the requisite form "betrays a lack of concern for the truth and, moreover, frustrates the committee in its examination of the applicant." (*In re DeBartolo* (1986), 111 Ill. 2d 1, 6.) Such a failure subjects the applicant's "integrity and veracity to question" (*In re Martin-Trigona* (1973), 55 Ill. 2d 301, 307) and, indeed, "has been held tantamount to a fraud upon this court." (*In re Ascher* (1980), 81 Ill. 2d 485, 499.) We believe that these principles apply equally to section 9 of the Act.

We also note the trial court's conclusion that the Board's findings in those areas simply "were not of a magnitude that would support the finding that [Abrahamson] lacked good moral character." The trial court essentially reweighed the evidence. This was not the trial court's function on administrative review. (*Murdy,*

103 Ill. 2d at 391.) The fact that Abrahamson made the misstatements is undisputed. We hold that the Department's findings were supported by evidence.

## C. Sanction

Lastly, the appellate court acknowledged that the Department's findings regarding the false Indiana University transcript were supported by evidence. However, the court noted that Abrahamson never used the transcript, and that the Department denied Abrahamson's application in September 1988, nearly five years prior to the appellate court's judgment. The court then concluded that Abrahamson "had been punished enough." Thus, the appellate court held that Abrahamson deserved the immediate receipt of his medical license. 210 Ill. App. 3d at 373-75.

We agree with the appellate court that a reviewing court, in determining whether an administrative finding is against the manifest weight of the evidence, should consider the severity of the sanction imposed. (*Cartwright v. Illinois Civil Service Comm'n* (1980), 80 Ill. App. 3d 787, 793, citing *Kelsey-Hayes Co. v. Howlett* (1978), 64 Ill. App. 3d 14, 17.) However, this court has held that a reviewing court defers to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest. *Massa v. Department of Registration & Education* (1987), 116 Ill. 2d 376, 388.

Applying these principles to the present case, we conclude that the appellate court's holding cannot stand. We have held that an Illinois medical license applicant must satisfy the Department that he or she has met the requirements of section 9 of the Act in order to receive a license. The Department concluded that Abrahamson did not and we have concluded that the Department's order was supported by evidence. Thus, Abrahamson is not en-

titled to an Illinois medical license and the Department's denial of Abrahamson's application was not severe.

Further, we note that the Department director allowed Abrahamson to reapply for a medical license two years following the date of the order, which has now long expired. Thus, Abrahamson is free to reapply for a license. If he satisfies the Department that he meets the statutory requirements for the license, he, at that point, will receive it.

For the foregoing reasons, the judgments of the appellate court and the circuit court of Cook County are reversed, and the order of the Department of Professional Regulation is affirmed.

*Judgments reversed;*
*order affirmed.*