RICHARD M. DALEY, Mayor of the City of Chicago and Local Liquor Control Commissioner, *et al.*, Plaintiffs-Appellees, v. EL FLANBOYAN CORPORATION, d/b/a El Rio Platense, Defendant-Appellant (The License Appeal Commission of the City of Chicago *et al.*, Defendants).

First District (3rd Division)   No. 1—99—4117

Opinion filed March 28, 2001.

Ralph P. Sammarco, of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago, for appellees.

PRESIDING JUSTICE HALL delivered the opinion of the court:

This is an action for judicial review of an administrative decision revoking the liquor license issued to defendant-appellant El Flanboyan Corporation, d/b/a El Rio Platense Lounge (Defendant), for the premises located at 1400 N. Hamlin Avenue in Chicago (the premises). On September 2, 1998, the mayor of the City of Chicago (the City), acting through the Local Liquor Control Commission (LLCC), revoked the liquor license, after finding that Defendant, through its agent, Mr. Jose Oyola, knowingly possessed a controlled substance, 0.6 grams of cocaine, while on the licensed premises in violation of section 402 of

the Illinois Controlled Substances Act (720 ILCS 570/402 (West 1998)) and section 4—60—141(a) of the Chicago Municipal Code (Chicago Municipal Code § 4—60—141(a) (1990)).

On September 18, 1998, Defendant filed a notice of appeal with the License Appeal Commission (LAC), appealing the LLCC's revocation order. On March 18, 1999, the LAC reversed the LLCC's revocation order, finding that the LLCC's ruling was against the manifest weight of the evidence and was not supported by the findings. On the same date, the LLCC filed a petition for rehearing before the LAC. On April 21, 1999, the LAC held a hearing regarding the LLCC's petition. On May 13, 1999, the LAC affirmed its original ruling.

On May 27, 1999, the LLCC filed a complaint in the circuit court seeking administrative review of the LAC's order of reversal. On September 1, 1999, the LAC entered a "Supplemental Order of Reversal," again finding that the LLCC's decision was against the manifest weight of the evidence and that the revocation order was not supported by the findings. On November 15, 1999, the circuit court reversed the LAC's decision and reinstated the LLCC's revocation order. Defendant filed a timely notice of appeal on November 24, 1999.

## BACKGROUND

Mr. Juan Cruz owns and operates a tavern called El Rio Platense (tavern), located at 1400 N. Hamilton Avenue in Chicago. Mr. Cruz owns and lives in the building in which the tavern is located. He testified that his brother, Mr. Jose Oyola, tends the bar for him when he leaves to purchase supplies or run errands.

Chicago police officer Robert Dubiel testified for the City that on September 12, 1997, while dressed in plain clothes, he and approximately six other officers visited the tavern to conduct a narcotics investigation. Upon entering the tavern, Officer Dubiel approached Mr. Oyola, who was tending the bar, and informed him that the tavern was being investigated for narcotics. Officer Dubiel testified that Mr. Oyola stated that he was the tavern's manager and then agreed to sign a consent to search form.

Officer Dubiel described the layout of the tavern as follows: upon entering the tavern, there is a large area for patrons. The bar is directly opposite the entrance, running perpendicular. Directly behind the bar is a small storage area, and to the right of the bar is a doorway that leads back into two storage rooms and to a stairway that descends into the basement. Officer Dubiel, with Mr. Oyola accompanying him, searched the storage rooms behind the bar. They first entered a large storage area that contained mostly cases of beer. They walked through this area and through another door that opened up into a second stor-

age area in which there was a large German shepherd dog, which Mr. Oyola was required to restrain. Officer Dubiel testified that in the second storage room he observed on top of a table, in plain view, an open box in which there were three clear plastic bags containing white powder, which he suspected was cocaine. Officer Dubiel testified that Mr. Oyola told him that the bags contained weightlifting powder, which belonged to his brother, Mr. Cruz. Mr. Oyola denied making such a statement.

Officer Dubiel took possession of the three plastic bags, he placed Mr. Oyola under arrest, and he continued to search the tavern for additional contraband. Mr. Oyola was eventually transported to the 25th District police station for processing along with the three confiscated bags of white powder. A lab test revealed that one of the three plastic bags contained 0.6 grams of cocaine.

## ANALYSIS

### Standard of Review

■ In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1998)), this court reviews the administrative agency's decision and not the circuit court's determination. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207, 709 N.E.2d 293, 297 (1999). Judicial review of an administrative agency's decision to revoke a license is limited to whether the agency's factual findings are against the manifest weight of the evidence and whether these findings support the imposed sanctions. *Roach Enterprises, Inc. v. License Appeal Comm'n*, 277 Ill. App. 3d 523, 528, 660 N.E.2d 276, 280 (1996). Upon review, an agency's findings of fact are held to be *prima facie* true and correct, and they must be affirmed unless the court concludes that they are against the manifest weight of the evidence. *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 427, 603 N.E.2d 477, 481 (1992).

An administrative agency's decision is not against the manifest weight of the evidence and must be sustained on judicial review if there is any evidence in the record that fairly supports the agency's decision. *Leong v. Village of Schaumburg*, 194 Ill. App. 3d 60, 65, 550 N.E.2d 1073, 1077 (1990). A reviewing court must not reweigh the evidence or make an independent determination of the facts. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).

The fact that the reviewing court might have ruled differently or that an opposite conclusion is reasonable will not justify reversal of the administrative findings. *Discovery South Group, Ltd. v. Pollution Control Board*, 275 Ill. App. 3d 547, 553, 656 N.E.2d 51, 56 (1995). If

the record contains evidence to support the administrative agency's decision, it should be affirmed. *Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117. However, an agency's conclusions of law are reviewed *de novo*. *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 214, 632 N.E.2d 1035, 1037 (1994).

## I. Waiver Issue

Defendant argues that the storage room in which the cocaine was found was not a part of the tavern's premises, but was instead a separate private garage. The City responds that Defendant waived this "premises" argument when Defendant failed to raise and develop this issue before the administrative agency. The City argues that Defendant's statement during closing argument before the LLCC, where it admitted that drugs were found on the premises, and Defendant's failure to raise the "premises" issue before the LLCC caused the City to believe that the nature of the room was not in dispute or at issue. The City contends that Defendant's failure to timely raise the "premises" issue deprived the City of the opportunity to rebut Defendant's "premises" argument with evidence such as a legal description of the licensed premises, photographs of the building and room, and further testimony by Officer Dubiel regarding the contents of the room.

■ In general, issues not placed before the administrative agency will not be considered for the first time on administrative review. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278, 695 N.E.2d 481 (1998). In *Texaco*, the Illinois Supreme Court found that this applied as well to constitutional issues. 182 Ill. 2d at 279. This practice avoids piecemeal litigation and it allows the opposing party a full and fair opportunity to present evidence to refute a claim or challenge. In the present case, the record shows that Defendant failed to raise the "premises" issue during the three opportunities it had to raise the issue. Defendant did not raise the "premises" issue during its hearing before the LLCC on July 10, 1998, or at its two hearings before the LAC on February 17, 1999, and April 21, 1999. Therefore, we find that Defendant waived the "premises" issue by failing to raise it during the evidentiary phase of the administrative hearing.

■ The "premises" issue was raised for the first time in the LAC's "Supplemental Order of Reversal," where the LAC found that the revocation was against the manifest weight of the evidence based on its determination that the City had failed to provide evidence that the storage room in which the cocaine was found was actually a part of the tavern's "premises." However, the LAC's determination regarding the "premises" issue was improper because the Defendant never raised this issue during its hearing before the LLCC. *Daley v. Kilbourn Club,*

*Inc.,* 64 Ill. App. 2d 235, 236, 211 N.E.2d 778, 779 (1965) (the LAC is limited in its review of an LLCC order to the record of testimony presented to the LLCC); *Daley v. Richardson,* 103 Ill. App. 2d 383, 386, 243 N.E.2d 685, 687 (1968) (the LAC's review of an LLCC order of revocation is comparable to the scope of reviewing courts regarding administrative matters, and the LAC may not receive *new* evidence and is limited in its review to the record presented to the LLCC); 235 ILCS 5/7—5, 7—9 (West 1998). Accordingly, we find that the LAC erred in finding that the revocation was against the manifest weight of the evidence, where this determination was based on a "premises" issue that was never presented before the LLCC. Waiver aside, we reject Defendant's "premises" argument.

## II. The Premises Issue

■ Section 4—60—010 of the Chicago Municipal Code defines "premises" as follows:

> "Premises means the place of business or other completely enclosed location particularly described in a liquor license where alcoholic liquor is stored, displayed, offered for sale or where drinks containing alcoholic liquor are mixed, concocted or poured and served for consumption. Premises does not include sidewalks, streets or other portions of the public way or private parking areas." Chicago Municipal Code § 4—60—010 (amended July 13, 1994).

Defendant argues that the LLCC's finding that Defendant's violation of section 402 (720 ILCS 570/402 (West 1998)) occurred on the licensed premises is against the manifest weight of the evidence, because the cocaine was confiscated in a private garage that is a part of the building but is not a part of the tavern's premises for licensing purposes. The City responds that the evidence supported the LLCC's finding that the room in question was not a garage, but was actually a storage room that was a part of the licensed premises.

In *Berzanskis,* the court found that evidence of stolen property found in the defendant liquor licensee's tavern basement and suppressed in the criminal case was nevertheless admissible in a revocation hearing where under the Liquor Control Act no search warrant was needed to search the licensed premises. *Daley v. Berzanskis,* 47 Ill. 2d 395, 269 N.E.2d 716 (1971). The tavern was located in a building that also housed a grocery store, defendant's five-room living quarters and a basement. The building's front entrance led to the tavern, a side entrance led to the grocery store, and a back entrance led to one of the bedrooms. *Berzanskis,* 47 Ill. 2d at 396-97, 269 N.E.2d at 718. A bar room and laundry room were located in the basement and were accessible by a stairway at the end of the upstairs bar. Defendant used the

basement to store empty containers in connection with the operation of the tavern. Stolen property was found in defendant's living quarters and in the basement. The court determined that the record supported the LLCC's finding that the basement was a part of the licensed premises on the grounds that defendant controlled the basement and the basement was accessible from the tavern. *Berzanskis*, 47 Ill. 2d at 400-01, 269 N.E.2d at 720.

■ In the instant case, as in *Berzanskis*, the storage room in which the cocaine was found was accessible from the tavern, it was controlled and owned by the same person who owned the tavern, and it was partially used as a storage area for the tavern. Therefore, we hold that the evidence in the record supported the LLCC's finding that the storage room was not a garage, but was actually a part of the tavern's premises. *Discovery South Group*, 275 Ill. App. 3d at 552-53, 656 N.E.2d at 55-56, citing *Abrahamson*, 153 Ill. 2d at 88, 606 N.E.2d at 1117 (If the record contains evidence to support the agency's decision, it should be affirmed).

### III. Constructive Possession of Drugs

■ The City argues that the LLCC's finding that Defendant's agent, Mr. Oyola, knowingly possessed cocaine while on the tavern's premises in violation of section 402 (720 ILCS 570/402 (West 1998)) was not against the manifest weight of the evidence. Defendant responds that the LLCC's finding on this issue was against the manifest weight of the evidence because the City failed to present evidence that Mr. Oyola placed the cocaine in the storage room, while on the other hand Defendant presented testimony which suggested that third parties over whom Defendant had no control most likely placed the drugs in the storage room.

To obtain a successful prosecution for possession of a controlled substance, the State must prove beyond a reasonable doubt that defendant had knowledge of the controlled substance and that the controlled substance was in defendant's immediate and exclusive control. *People v. Adams*, 242 Ill. App. 3d 830, 832, 610 N.E.2d 763, 765 (1993). Knowledge may be proved by evidence of defendant's acts, declarations or conduct from which it may be inferred that he knew of the existence of the controlled substance at the place it was found. *People v. Mack*, 12 Ill. 2d 151, 145 N.E.2d 609 (1957). Possession can be established by evidence of actual possession or constructive possession. *People v. Mason*, 213 Ill. App. 3d 163, 167, 571 N.E.2d 1127, 1130 (1991). Moreover, a defendant can possess a controlled substance jointly with other individuals. *People v. Burke*, 136 Ill. App. 3d 593, 598-99, 483 N.E.2d 674, 679 (1985).

Due to the difficulty of proving knowledge of the presence of narcotics, actual possession need not be demonstrated to sustain a conviction if constructive possession can be inferred from the facts. *People v. Ray*, 232 Ill. App. 3d 459, 461, 597 N.E.2d 756, 758 (1992). "Constructive possession exists where there is an intent and capability to maintain control and dominion over the narcotics and may be proved by showing that the defendant controlled the premises where the narcotics were found." *Mason*, 213 Ill. App. 3d at 167, 571 N.E.2d at 1130. When a controlled substance is found on premises under defendant's control, this fact, in and of itself, gives rise to an inference that defendant had knowledge and possession of the controlled substance (constructive possession), absent other facts and circumstances that create a reasonable doubt as to his guilt. *People v. Hester*, 87 Ill. App. 3d 50, 52-53, 409 N.E.2d 106, 108 (1980).

In the present case, unlike in a criminal proceeding where the burden of proof is beyond a reasonable doubt, the City was required to prove by a preponderance of the evidence that Defendant's agent, Mr. Oyola, controlled the tavern's premises to such an extent that it could be inferred that he knowingly possessed the cocaine. See *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 204, 625 N.E.2d 945, 955-56 (1993) (burden of proof in administrative proceeding involving criminal charge is preponderance of the evidence).

The City contends that the evidence of Mr. Oyola's control of the storage room in which the cocaine was found was sufficient to sustain the LLCC's finding that he had knowledge and possession of the cocaine. The City argues that it showed that Mr. Oyola had immediate and exclusive control over the tavern's premises by presenting evidence that he was acting as the tavern's sole manager at the time the cocaine was found on the tavern's premises, that he had keys to the tavern and to both of its storage rooms, including the second storage room in which the cocaine was found, and that he controlled the guard dog that was housed in this second storage room. Defendant, however, responds that Mr. Oyola's control of the storage room was not exclusive enough to give rise to an inference that he had knowledge and possession of the cocaine because tenants who also had access to the storage room more than likely placed the cocaine in the room.

Mr. Cruz testified that he often allowed his tenants to pass through the storage room to gain access to garbage Dumpsters located in the building's backyard, to prevent the tenants from having to walk around the building and through the alley. Mr. Oyola testified likewise. However, he added that either he or Mr. Cruz often escorted tenants through the storage room to prevent them from being bitten by the dog housed in the room. Officer Dubiel, who testified that Mr. Oyola

was required to restrain the dog when the police officers searched the second storage room, corroborated Mr. Oyola's testimony regarding the dog's temperament.

Mr. Oyola also testified that on some occasions when he has escorted tenants into the storage room, he has left them there unattended if he was required to return to the bar to serve a customer. Mr. Oyola testified that on the date of the incident, he had earlier escorted three tenants through the second storage room and left them there unattended, because he was required to return to the bar.

The City responds that the guard dog's presence in the storage room makes it doubtful that tenants would have been left alone and unattended in the storage room. The City argues that the dog's presence in the storage room, coupled with Mr. Cruz' testimony that the tenants did not use the storage room for their storage, makes it highly improbable that tenants would have had the unsupervised time or the desire to place cocaine in the storage room. The City further argues that, even if the tenants had access to the storage room where the cocaine was found, this alone would be insufficient to defeat a charge of constructive possession. *People v. Scott*, 152 Ill. App. 3d 868, 871, 505 N.E.2d 42, 45 (1987) ("Mere access by other persons to the area where drugs are found is insufficient to defeat a charge of constructive possession").

Evidence of control is often circumstantial; therefore, constructive possession is generally determined by weighing those facts that tend to support a defendant's control over the substance against those facts that show a lack of control. *People v. Whalen*, 145 Ill. App. 3d 125, 132, 495 N.E.2d 122, 127 (1986). Courts in other jurisdictions have found that a defendant's use of a guard dog to control and guard the premises where drugs are found gives rise to an inference that he had knowledge and possession of the drugs. For example, in *Franks*, the Missouri Appellate Court held that the evidence was sufficient to convict the defendant for possession of a controlled substance found in his backyard where the presence of an elaborate privacy fence and formidable guard dog tended to show defendant's knowledge and possession of the drugs. *State v. Franks*, 688 S.W.2d 787 (Mo. App. 1985). Similarly, in *Parson*, the Indiana Appellate Court held that the evidence was sufficient to support a finding that a defendant lessee of a motor home constructively possessed heroin despite his nonexclusive control of the premises, where he had placed his German shepherd-sized guard dog in a fenced-in area surrounding the exterior of the house where the heroin was concealed. *Parson v. State*, 431 N.E.2d 870 (Ind. App. 1982).

In the present case, Mr. Oyola's control of the guard dog that was

housed in the storage room where the cocaine was found, along with his possession of the tavern's keys, including the key to the storage room where the cocaine was found, and his status as the tavern's part-time manager were sufficient evidence for the LLCC to have concluded by a preponderance of the evidence that he was in constructive possession of the cocaine found in the storage room.

Upon judicial review under the manifest weight of the evidence standard, an administrative agency's decision may be overturned only if, after reviewing the evidence in the light most favorable to the agency, the reviewing court determines that no rational trier of fact could have reached the agency's conclusion. *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 514, 607 N.E.2d 182, 185 (1992). Based on a review of the evidence in the light most favorable to the LLCC, we hold that the LLCC's finding that Defendant's agent, Mr. Oyola, knowingly possessed cocaine while on the tavern's premises was not against the manifest weight of the evidence.

### IV. Revocation of Liquor License

■ Defendant argues that the LLCC acted arbitrarily and abused its discretion by revoking Defendant's liquor license. The standard of review regarding sanctions imposed by the LLCC is to determine whether the agency acted unreasonably or arbitrarily or selected a type of discipline unrelated to the control of liquor. *Jacquelyn's Lounge, Inc. v. License Appeal Comm'n*, 277 Ill. App. 3d 959, 966, 661 N.E.2d 419, 423-24 (1996). The violation of any statute, ordinance or regulation related to the control of liquor generally constitutes cause for the revocation of a liquor license. *Lopez v. Liquor Control Comm'n*, 120 Ill. App. 3d 756, 765, 458 N.E.2d 599, 604-05 (1983).

The record in the present case shows that the LLCC revoked Defendant's liquor license based upon violations at issue in the present case and on Defendant's 1989 narcotics violation that resulted in a 14-day suspension of its liquor license.

Therefore, based on Defendant's previous narcotics violation and on our present holding that the LLCC's finding that Mr. Oyola knowingly possessed drugs while on the tavern's premises was not against the manifest weight of the evidence, we hold that the LLCC did not act unreasonably or arbitrarily or abuse its discretion in revoking Defendant's liquor license.

## V. Conclusion

For the reasons set forth above, the judgment of the circuit court affirming and reinstating the LLCC's order of revocation is affirmed.

Affirmed

CERDA and WOLFSON, JJ., concur.