2024 IL App (1st) 231140-U

FOURTH DIVISION
Order filed March 14, 2024

No. 1-23-1140

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MARK SPORCICH, | ) | Appeal from the |
| | ) | Circuit Court of Cook |
| Plaintiff-Appellant, | ) | County. |
| | ) | |
| v. | ) | No. 22 CH 3335 |
| | ) | |
| VILLAGE OF ARLINGTON HEIGHTS, VILLAGE OF | ) | |
| ARLINGTON HEIGHTS ADMINISTRATIVE | ) | |
| ADJUDICATION, VILLAGE OF ARLINGTON HEIGHTS | ) | |
| DEPARTMENT OF BUILDING AND LIFE SAFETY, and | ) | |
| DANIEL HANLON, | ) | |
| | ) | Honorable |
| | ) | Clare J. Quish, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Martin and Ocasio concurred in the judgment.

**ORDER**

¶ 1 *Held*:    We affirmed the decision of the circuit court which affirmed a decision of an administrative hearing officer finding a building code violation and imposing a fine where the plaintiff failed to demonstrate that the decision was against the manifest weight of the evidence or that the hearing officer violated his due process rights in the conduct of the hearing.

¶ 2    The plaintiff, Mark Sporich, acting *pro se*, appeals from the order of the circuit court affirming an administrative adjudication of the Village of Arlington Heights (Village) which found that he violated the Village's maintenance code by failing to protect the soffits and install gutters on a house he owned in the Village and assessing a $500 fine. The complaint for administrative adjudication was filed by the Village's Department of Building and Life Safety. On appeal, the plaintiff raises five issues:

"I. Whether the circuit court erred in its order entered on June 26, 2023, by failing to find that the adjudication hearing officer initially erred in his ruling due to Sporcich's properly completed permit extension.

II. Whether the circuit court erred in its order entered on June 26, 2023, by failing to find that the adjudication hearing officer initially erred in his ruling despite Sporcich's continued compliance with additional requests and burdens imposed by the Village of Arlington Heights between October 12th, 2021, and March 8th, 2022, despite the existence of a valid permit and extension.

III. Whether the circuit court erred in its order entered on June 26, 2023, by basing its analysis and conclusion on errors in the background statements that contradict testimony and evidence in the record.

IV. Whether the circuit court erred in its order entered on June 26, 2023, by denying Marc Sporcich's due process rights and right to a fair hearing due to the administrative review officer's refusal to accept additional evidence and testimony from Sporcich during the October 12th, 2021 and March 8th, 2022 hearings.

V. Whether the circuit court erred in its order entered on June 26, 2023, by failing to consider the allegations of misconduct by village employees involved in the administrative proceedings, including the Village of Arlington Heights' Department of Building and Life Safety and the adjudication hearing officer, Daniel Hanlon. The alleged misconduct, such as bias, procedural improprieties, and failure to adhere to legal standards, directly impacted the fairness and integrity of the administrative process."

¶ 3 Although the Plaintiff addresses his arguments to the decision of the circuit court, when reviewing an order of the circuit court on administrative review, we review the decision of the administrative agency not the circuit court. *Provena Covenant Medical* Center *v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). As a consequence, the plaintiff's arguments can be summarized as two basic contentions: (1) the findings of the hearing officer were against the manifest weight of the evidence and (2) the hearing officer violated the plaintiff's due process rights by limiting his arguments and failing to consider relevant evidence. For the reasons that follow, we affirm the decision of the circuit court.

¶ 4 On September 8, 2021, a building inspector for the Village sent a letter to the plaintiff stating that the house he owned on Haddow Avenue was in violation of the Village's maintenance ordinances sections 26-101 (304.2) and 26-101 (304.7). See Village of Arlington Heights Municipal Code (Code) § 26-101 (revised March 1, 2020) (adopting the 2018 Edition of the International Property Maintenance Code); see also 2018 International Property Maintenance Code §§ 304.2 (protective treatment), 304.7 (roofs and drainage). According to the letter, the plaintiff's house was inspected and found to be lacking protective covering for the fascia and soffits and missing gutters and downspouts. The letter continued stating:

"Please be aware that failure to comply by September 20, 2021 will result in the Village pursuing a legal remedy. Please be advised that permit # 19-65 has expired. No correspondence has been received regarding the permit extension since May 2021. As a result, permit # 19-65 will be closed."

On September 22, 2021, the Village filed a complaint against the plaintiff alleging the same violations.

¶ 5       On October 12, 2021, an administrative hearing officer conducted a hearing on the Village's complaint. The transcript of the initial portion of that hearing is missing from the record. The plaintiff submitted a supplement to the record, acknowledging that a portion of the record was missing and supplementing the record with a bystander's report for the missing portion. The circuit court granted the plaintiff's motion to supplement the record with the agreement of the parties.

¶ 6       According to the supplemental record, the plaintiff's original architect and general contractor stopped work on a remodeling project at the subject building. It took several months to terminate the construction contract. The plaintiff admitted that "there are numerous potential violations if one does not take into account that [*sic*] the obvious fact that the property is a construction site." The plaintiff testified that he had been told multiple times that the building permit for the site was active.

¶ 7       According to the transcript, the plaintiff stated that he had some email communications from the Village. The hearing officer asked "Does one of them say you have a permit extension?" The plaintiff responded "I don't believe it's that cut and clear." The plaintiff testified that he was told that the Village was waiting for revised plans. However, when asked if he provided the plans, the plaintiff responded, "They didn't give me a deadline on the revised plans." The plaintiff further added that the remodeling project began in May 2019, but was never completed and that he was

suing the original contractor. The hearing officer noted that photographs provided by the Village showed a house wrapped in Tyvek with exposed fascia and soffits. The plaintiff agreed that the fascia was exposed but added that it needed to be removed because the builder did not apply it properly.

¶ 8 Michael Boyle, the Village's permits supervisor, stated that he received the plaintiff's permit extension request on May 14, 2021. Boyle did not process the permit extension because he was anticipating updated plans. Boyle added that he spoke to the plaintiff on the phone and told him that he was going to hold processing of the extension request until the Village received the plaintiff's plans.

¶ 9 The plaintiff argued that he was making progress on completing the construction and stated that he had his plans revised and they were "ready to be submitted." The hearing officer clarified asking, "But you haven't submitted those yet"; and the plaintiff responded, "No. I could do that if necessary."

¶ 10 When called to testify, Jorge Torres, the Village's building inspector, stated:

"They would recommend – I would recommend – if we give them a one-month extension for full submittal of the building plans, approves submittal of the building plans, drawings. We've been waiting since May of this year. If them – if they submit plans and – and they're approved by the building department, then we could – we could remove the fine that we – I'd recommend imposing today."

¶ 11 Following the hearing, the hearing officer entered an order assessing a $750 fine against the plaintiff and continuing the matter until November 9, 2021, for submission of approved plans and a motion to vacate the fine, stating:

"Well, I'm gonna enter a finding·of liable today.·I am gonna take the Village's suggestion though to make that plan subject to a·motion to vacate.·So basically, as long as you and the Village aren't proceeding forward to an end and the Village says yes, they've done what·we need them to do, I will come to you in the next month in November assuming those -- the plans have been submitted, approved, we will talk about whether I vacate the fine."

¶ 12    On November 9, 2021, an unidentified Village employee testified that the plaintiff's plans had been submitted but not approved, and he requested additional time for Village review. The hearing officer continued the matter until January 11, 2022.

¶ 13    On January 11, 2022, Torres testified that the plaintiff's plans had not been approved. The plaintiff stated that he was waiting for a response from the Village. The case was passed so that Torres and the plaintiff could discuss the matter. When the case was recalled, Torres stated that there were some plan revisions being requested, and the hearing officer continued the case to March 8, 2022.

¶ 14    On March 8, 2022, Torres testified that the plaintiff's property was "not in compliance yet." The plaintiff responded that the revised plans were with his architect and that he should have plans drawn up "by next week probably." After further discussion, the plaintiff stated that he had received some comments from the plan reviewer and sent them to his architect. The plaintiff added "I can show you the emails I have." The hearing officer responded "No, I trust what you say." The plaintiff argued that the delay in the construction project was attributable to the Village's refusal to perform a framing inspection. Torres responded that the Village enforcement officers were not home inspectors and would not inspect the framing until mechanical and plumbing had been installed.

¶ 15    Near the end of the hearing the following colloquy occurred:

"THE COURT: We've argued this

MARK SPORCICH: -- they haven't

THE COURT: We've argued this back -- you've argued this back and forth multiple times and you're gonna keep repeating yourself and everybody in this room is gonna have to sit there and listen to you repeat yourself to me. I understand your argument.·I do I get it. Go·ahead.

MARK SPORCICH: Yeah. I -- I called yesterday and talked to George and asked him if we could defer this one month because it had plans, and for some reason he wanted to drag me in here again It feels like harassment.

THE COURT: I'm granting motion to vacate in part and denying in part."

¶ 16 Ultimately, the hearing officer granted the motion to vacate in part, treating it as a motion to reduce the fine. The hearing officer imposed a $500 fine for the failure to provide gutters and soffit protection.

¶ 17 On April 12, 2022, the plaintiff filed a complaint in the circuit court for administrative review of the hearing officer's decision. After considering the parties' briefs and arguments, the circuit court affirmed the decision of the hearing officer finding the plaintiff liable for two building code violations and imposing a $500 fine. This appeal followed.

¶ 18 We first address the question of whether the administrative adjudication and resulting fine are against the manifest weight of the evidence. The hearing officer did not make written findings of fact, but implicit in his order are two factual findings: (1) the building did not have gutters or soffit protection at the time of the inspection, and (2) the plaintiff did not have a valid extension of his building permit.

¶ 19    The plaintiff's challenge to the sufficiency of the evidence supporting the administrative adjudication appears to be based on the argument that he had a valid extension of his permit and that Boyle's testimony to the contrary was inconsistent.  We find no merit to the argument.

¶ 20    Division 31.1 of article 11 of the Illinois Municipal Code (65 ILCS 5/art. 11 div. 31.1 (West 2022)) provides a mechanism for enforcement of building code violations. Section 11-31.1-11 of the Code adopts the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)) as the method of review for decisions by a hearing officer in building code enforcement proceedings.

¶ 21    Section 3-110 of the Administrative Review Law provides that: "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2022). On administrative review, courts will not reweigh the evidence or substitute their judgment for that of the agency. *Miller v. Board of Trustees of Oak Lawn Police Pension Fund*, 2019 IL App (1st) 172967, ¶ 52. Findings of fact will be reversed only if they are against the manifest weight of the evidence. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50

¶ 22    We turn first to the question of whether the plaintiff's building had gutters and soffit protection as required by the Village's Code. Photographic evidence contained in the record clearly shows that the plaintiff's building lacked gutters and had unfinished fascia and soffits. Further the Village's building inspector testified that the building lacked gutters and soffits and was not in compliance. Torres testified that, as of March 8, 2022, the property was still not in compliance. The plaintiff does not argue that there were gutters or protected soffits in place on the date of the alleged violation. Therefore, we cannot conclude that the hearing officer's implicit findings that the building lacked gutters and that the soffits were unprotected were against the manifest weight of the evidence.

¶ 23     As to the issue of whether the plaintiff had a building permit in effect at the time of the alleged violation, the hearing officer heard testimony that the plaintiff had only submitted a request for a permit extension prior to the violation. The hearing officer also heard evidence that the permit extension was on hold while the Village waited for revised plans. The plaintiff points to an email which stated that Michael Boyle, the Village's permit supervisor, would "process" the extension application. However, the plaintiff has identified nothing in the record which would indicate that the application was ever approved, or the extension granted. Further, at the hearing on October 12, 2021, the plaintiff admitted he had not yet submitted the revised plans necessary for an extension. At the March 8, 2022, hearing, the plaintiff admitted that the latest revised plans had not been submitted but were still with his architect. The record in  this case is clear that at no time relevant did the plaintiff have a valid permit.

¶ 24     Furthermore, as defendants argue, the Village's ordinances contain no exception to the maintenance requirements for a building which is the subject of a valid building permit. We have reviewed the Village's ordinances and find no such exception, nor has the plaintiff cited any authority for the proposition that his compliance with the maintenance ordinances would be excused if his building permit was valid.

¶ 25     Based on the record before us, we cannot conclude that the hearing officer's implicit finding that the plaintiff's building was in violation of section 26-101 of the Village Code was against the manifest weight of the evidence.

¶ 26     The plaintiff also contends that the hearing officer violated his due process rights in the manner in which he conducted the hearings. The plaintiff argues generally that there was misconduct and bias demonstrated by the hearing officer and Village employees. However, the plaintiff only

identifies two specific instances where the hearing officer is alleged to have violated his due process rights

¶ 27     First, the plaintiff argues that the hearing officer deprived him of the right to present evidence by stating "I trust what you say" when the plaintiff offered to present emails from his architect. The plaintiff argues that "the emails that [he] was not permitted to produce would have provided material proof to both courts to question the credibility of witnesses and change the outcome." We find no support for this contention in the record. The hearing officer's comment only related to the limited question of whether the plaintiff had contacted his architect, and the hearing officer simply stated that he would accept the plaintiff's assertion without documentary evidence.

¶ 28     Due process is a flexible concept and the procedures employed by an administrative agency need only include such procedural protections as fundamental principles of justice and the particular situation demands. *M.F. Booker v. Board of Education of City of Chicago*, 2016 IL App (1st) 151151, ¶ 57 (citing *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992)). The procedures employed need not mimic a judicial proceeding, but on administrative review a reviewing court has a duty to ensure that a fair and impartial procedure was used. *Id.* Nothing the plaintiff said suggested that he intended to introduce additional emails or that those emails would be somehow relevant to the core issues in this case, *i.e.*, whether there were gutters and soffits on the house and whether the plaintiff had made sufficient progress toward rectifying the violation to excuse the imposition of a fine. Therefore, we cannot conclude that the hearing officer's comment deprived the plaintiff of due process.

¶ 29     The plaintiff also argues that the hearing officer violated his due process rights during the hearing on his motion to vacate the fine when this exchange occurred:

"THE COURT: We've argued this

MARK SPORCICH: -- they haven't

THE COURT: We've argued this back -- you've argued this back and forth multiple times and you're gonna keep repeating yourself and everybody in this room is gonna have to sit there and listen to you repeat yourself to me. I understand your argument.· I do I get it. Go·ahead."

¶ 30    After reviewing the record as a whole, we find no due process violation in the hearing officer's remarks. The plaintiff was indeed repeating arguments he had made earlier. The hearing officer was under no obligation to allow him to continue. The plaintiff has cited no authority for the proposition that litigants have an unfettered right to present repetitive arguments. Due process demands only a meaningful opportunity to be heard, not the right to be heard in whatever manner a litigant wishes. See *Trettenero v. Police Pension Fund of City of Aurora*, 333 Ill. App. 3d 792, 799 (2002). Nor do we find any generalized due process violation after examining the record as a whole. Accordingly, we reject the plaintiff's due process arguments.

¶ 31    Based on the foregoing analysis, we conclude that the hearing officer's finding that the plaintiff's building lacked gutters and soffit protection was not against the manifest weight of the evidence. We further conclude that the hearing officer did not violate the plaintiff's due process rights by limiting his ability to argue his case. We, therefore, affirm the order of the circuit court which affirmed the administrative adjudication of the Village's finding that the plaintiff violated the Village's Code by failing to protect the soffits and install gutters on a house he owned and assessing a $500 fine.

¶ 32    Affirmed.