# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Callahan v. Sledge*, 2012 IL App (4th) 110819

---

| | |
|---|---|
| Appellate Court Caption | STACY J. CALLAHAN, as Special Representative of the Estate of Daniel J. Callahan, Deceased, Plaintiff-Appellant, v. JAMES P. SLEDGE; THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES; THE WELLPOINT COMPANIES, INC.; HEALTHLINK, INC.; and HEALTHLINK HMO, INC., Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0819 |
| Filed<br>Rehearing denied | September 6, 2012<br>October 9, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's decedent was not entitled to coverage under his State of Illinois employee group health insurance plan for treatment of his melanoma with Avastin, since defendant's finding that Avastin was "investigational" or "experimental" and not covered was supported by the record and was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 09-MR-727; the Hon. Eric S. Pistorius, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Thomas F. Londrigan (argued) and Douglas J. Quivey, both of Londrigan, Potter & Randle, P.C., of Springfield, for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Richard S. Huszagh (argued), Assistant Attorney General, of counsel), for appellees James P. Sledge and Department of Central Management Services. |
| | |
| | Neal F. Perryman and David W. Gearhart, both of Lewis, Rice & Fingersh, L.C., of St. Louis, Missouri, and Paul Brown, of Brown, Hay & Stephens, LLP, of Springfield, for other appellees. |

| Panel | JUSTICE McCULLOUGH delivered the judgment of the court, with opinion. |
| | Justice Cook concurred in the judgment and opinion. |
| | Justice Appleton specially concurred, with opinion. |

## OPINION

¶ 1    The decedent, Daniel J. Callahan (Daniel), was insured under a State of Illinois employee group health plan that was administered by Healthlink HMO, Inc. (Healthlink). Healthlink denied Daniel, who had been diagnosed with melanoma, coverage for Avastin, a drug recommended by Daniel's treating oncologist. Daniel appealed Healthlink's decision to the Department of Central Management Services (CMS), which upheld the denial of coverage. He then filed a complaint in the circuit court against James P. Sledge, CMS's Director (Sledge); CMS; The Wellpoint Companies, Inc. (Wellpoint); Healthlink, Inc.; and Healthlink, seeking administrative review of CMS's decision and declaratory relief against all defendants. Following Daniel's death in November 2010, his wife, plaintiff Stacy J. Callahan, was appointed as the special representative of his estate. In August 2011, the circuit court dismissed Wellpoint; Healthlink, Inc.; and Healthlink from the action with prejudice and found in favor of Sledge and CMS. Plaintiff appeals, arguing (1) Avastin was "medically necessary" treatment covered by Daniel's health-care plan, (2) Daniel was denied due process throughout contested administrative proceedings, (3) section 6.4 of the State Employees Group Insurance Act of 1971 (Group Insurance Act) (5 ILCS 375/6.4 (West 2008)) required coverage of Avastin under Daniel's health plan, and (4) plaintiff was entitled to a declaratory judgment against all defendants. We affirm.

¶ 2    The record shows Daniel was a State of Illinois employee and insured under a state-

-2-

sponsored health plan administered by Healthlink. In 2000, he was diagnosed with melanoma, and a tumor on his lower lip was surgically removed. In August 2006, Daniel's cancer recurred. He received medical treatment but his cancer only progressed. In September 2008, Dr. Gerald Linette, Daniel's oncologist, requested advanced approval from Healthlink for "off-label" treatment with Avastin (also known as bevacizumab) in combination with two other drugs, carboplatin (also known as Paraplatin) and Taxol (also known as paclitaxel). Dr. Linette opined such treatment was Daniel's best available option. On October 15, 2008, Healthlink responded to Dr. Linette's request, finding Avastin did "not appear to be covered" by Daniel's benefit plan because it was considered "investigational" and, therefore, not "medically necessary." Healthlink preapproved the remaining two drugs for coverage.

¶ 3       On October 17, 2008, Daniel's attorney asked Healthlink to "set forth in writing" the basis for its determination that Avastin was not "medically necessary" and treat his request as an appeal "under the provisions of the State of Illinois Employee Healthcare Plan Summary." A Healthlink grievance and appeals representative responded that Healthlink could not release information regarding Daniel without his written authorization. On November 28, 2008, Daniel provided such authorization. On December 12, 2008, Healthlink received further correspondence from Daniel's attorney, questioning Healthlink's position regarding Daniel's appeal and "an explanation as to how *** appeal procedures should proceed." On December 30, 2008, Healthlink responded as follows:

> "[T]he medication Bevacizumab/Avastin does not appear to be covered under the State of Illinois' benefit plan provisions. The plan excludes various services from coverage, including investigational care. The requested medication Avastin is considered investigational, and therefore not medically necessary, as there is insufficient scientific evidence demonstrating clinically significant improved outcomes for use in stated condition."

Enclosed with Healthlink's response was its medical policy pertaining to Avastin, showing the drug was deemed "medically necessary" to treat only specific types of cancer, not including melanoma.

¶ 4       On January 30, 2009, Dr. Linette authored a second letter and requested that Healthlink reconsider its decision not to cover "off-label" treatment with Avastin in combination with the two other preapproved drugs. He noted, beginning in October 2008, Daniel raised funds that allowed him to receive the requested treatment and testing "showed significant treatment response." Dr. Linette again stated his opinion that continued treatment with the drug combination that included Avastin was Daniel's best treatment option. On March 2, 2009, Healthlink reasserted its position that Avastin was considered "investigational" and, therefore, not "medically necessary."

¶ 5       On June 23, 2009, Daniel sent correspondence to Healthlink and attached copies of medical bills that showed his treatment with Avastin. He asked Healthlink to reconsider paying the charges for the drug. On July 20, 2009, Healthlink responded, stating Daniel's claims were processed in accordance with his benefits plan. It noted the summary plan description for Daniel's health plan excluded from coverage "[e]xperimental, obsolete or investigative procedures, services, or supplies." Further, Healthlink stated Avastin was not

approved by the Food and Drug Administration (FDA) for Daniel's condition. It notified Daniel that he could submit a request for a second review of his appeal to the State of Illinois, Group Insurance Division.

¶ 6         On July 29, 2009, Daniel's attorney authored a letter to Healthlink's grievance and appeals department. He asserted Daniel's position that Avastin was not experimental, obsolete, or investigative and noted that it was prescribed by Daniel's oncologist and proven effective in Daniel's particular case. The same date, Daniel's attorney contacted the State of Illinois, Group Insurance Division, to request a second review of Healthlink's denial of coverage for Avastin. On August 7, 2009, CMS notified Daniel's attorney that the review request had to be "in writing from the plan participant and be accompanied by all medical documentation supporting the reasons for reconsideration of the benefit determination."

¶ 7         On August 25, 2009, Healthlink referred the matter to an independent medical reviewer, seeking a determination as to whether, in Daniel's case, Avastin alone or in combination with Taxol and carboplatin was "medically necessary" or its use could be considered "investigational." The reviewer concluded use of Avastin either alone or in combination with other drugs would not be considered "medically necessary" and would, instead, be considered "investigational." The reviewer noted the National Comprehensive Cancer Network (NCCN) clinical guidelines for melanoma "do not list Avastin as a viable option in the therapy of metastic[*sic*] disease" and stated that "[a]lthough preliminary results with the combination of Avastin and Taxol and Carboplatin are somewhat promising, further studies are necessary to prove any significant effect on net health outcomes."

¶ 8         On September 4, 2009, Daniel wrote a letter to CMS's Group Insurance Division asking for his appeal to be considered and asserting Avastin was "medically necessary" treatment. On September 17, 2009, CMS notified Daniel of its "final claim determination" to uphold Healthlink's denial of Avastin for treatment of his condition.

¶ 9         Daniel sought judicial review with the circuit court and, on October 20, 2009, filed his original complaint in the matter. On September 3, 2010, he filed an amended complaint. Relevant to this appeal, Daniel sought review of CMS's decision under the Administrative Review Law (735 ILCS 5/3-101 to 113 (West 2008)) and a declaratory judgment against defendants. With respect to his claim for declaratory relief, Daniel sought a declaration from the trial court that (1) CMS violated the Group Insurance Act (5 ILCS 375/1 to 17 (West 2008)) by failing to promulgate rules governing appeals by state employees of denials of health care claims, (2) state employees are entitled to a hearing and a meaningful right to be heard before CMS denies appeals of health-care claims, (3) Healthlink is required to follow its own internal policies regarding expediting appeals, (4) Healthlink is required to identify and make available for cross-examination all medical experts used to review health-care claims, (5) CMS apply the Group Insurance Act to all health-care appeals involving cancer drugs and to make all applicable peer reviewed studies part of the record, (6) Healthlink is mandated to follow Illinois state law and rules when denying health insurance claims, and (7) Healthlink must pay for Daniel's past and future prescribed Avastin treatments.

¶ 10        On November 15, 2010, Daniel died. On December 30, 2010, the circuit court appointed plaintiff as the special representative of Daniel's estate.

¶ 11    On February 23, 2011, the circuit court ordered that the administrative record be reopened and the case "remanded to CMS for the purpose of review of any additional documentation provided in support of the appeal." The court determined "[t]he administrative process did not afford [p]laintiff sufficient opportunity to provide documentation relating to the applicability of" section 6.4 of the Group Insurance Act (5 ILCS 375/6.4 (West 2010)). Further, it ordered that "[o]nly information that could have been in the record as of September 17, 2009, the date of the CMS determination, [was] relevant."

¶ 12    On remand, plaintiff submitted additional materials. On May 17, 2011, CMS issued a decision, stating it considered the new material plaintiff submitted and also "utilized the services of an independent external review organization." CMS noted all information included in plaintiff's appeal was forwarded to the reviewer, who was a licensed physician and board certified in the area of medical oncology and internal medicine. The reviewer determined "[t]he use of Avastin for the treatment of metastic[*sic*] melanoma [was] investigational and *** not recommended for the treatment of advanced melanoma," and further stated as follows:

> "Avastin is not listed in any formulary or compendium as an approved drug for the treatment of melanoma. There are no published national treatment guidelines that include Avastin as part of an approved regimen for the treatment of melanoma.
>
> Several publications have been submitted as evidence that Avastin is, or should be, recommended for the treatment of advanced melanoma. A close reading of all the articles submitted will conclude that the authors of these articles consider the early results of these phase II trials promising, but that further study should be performed. All cancer specialists recognize that early promising results in a small, non-randomized, selected patient group must be confirmed in a larger randomized study before concluding that the investigational agent, and not the selected population, was the reason for the outcome. The publication of such 'promising' phase II trials in peer reviewed medical literature does not mean that the new treatment is then accepted as a standard. There are instances in very rare diseases, which do not include melanoma, where a phase II trial is performed and the result is dramatically better than what had previously been reported. Such studies are designed at the outset to try to establish a clinically meaningful benefit with the recognition that a larger, randomized phase III study would never be performed because of the rarity of the illness. That situation does not apply to a common malignancy such as advanced melanoma.
>
> The submitted literature does not support the use of Avastin outside the context of a clinical trial."

CMS concluded that, based upon the independent medical review, the Group Insurance Act, and the plan design of Daniels' insurance policy, it would uphold Healthlink's denial of coverage for Avastin.

¶ 13    On August 22, 2011, the circuit court entered its judgment in the matter. The court made the following findings:

> "[T]here is no due process protection, on a constitutional level, of a property interest for [Daniel] to receive approval for Avastin; that the administrative process, while

previously did not afford plaintiff sufficient opportunity to provide documentation as it relates to the applicability of [section 6.4 of the Group Insurance Act (5 ILCS 375/6.4 (West 2008))] has now been addressed; and that further, there are no formal clinical studies, the results of which have been published in at least two peer-reviewed medical journals, whereby Avastin has been recommended for the treatment of melanoma. Therefore[,] this is not a medical or prescription drug that has been approved by the State of Illinois pursuant to [section 6.4], and therefore is not subject to payment by CMS.

The court further finds that in interpreting the definition of medical necessity, the court must revert back to [section 6.4], which provides the court with guidance as to how to interpret and define medical necessity, and that while in this particular situation, the court is cognizant of the fact that an approved, well-respected oncologist recommended this treatment, and more importantly, this treatment for a period of time had a certain measure of success as it relates to this particular plaintiff, that the court is not permitted, based upon its interpretation of the above statute, to consider that. Therefore, the court finds that this treatment was not medically necessary."

The court then ruled in favor of Sledge and CMS and ordered all non-State defendants dismissed from the action.

¶ 14    This appeal followed.

¶ 15    On appeal, plaintiff challenges CMS's denial of coverage for the drug Avastin to treat Daniel's melanoma under Daniel's state-sponsored health benefits plan. She further argues Daniel was denied due process during proceedings to resolve his coverage claim and the circuit court erred in rejecting her claim for declaratory relief against all defendants.

¶ 16    Initially, we address plaintiff's claim for administrative review of CMS's decision to uphold the denial of coverage for Avastin. "With administrative cases, this court reviews the administrative agency's decision, not the circuit court's." *Kildeer-Countryside School District No. 96 v. Board of Trustees of the Teachers' Retirement System*, 2012 IL App (4th) 110843, ¶ 20.

" 'Under the Administrative Review Law [(735 ILCS 5/3-110 (West 2008))], the scope of judicial review extends to all questions of law and fact presented by the record before the court.' [Citation.] On review, this court must determine whether the agency's findings of fact are against the manifest weight of the evidence. [Citation.] Questions of law are subject to *de novo* review. [Citation.] Finally, '[a]n agency's conclusion on a mixed question of fact and law is reviewed for clear error.' [Citation.]" *Department of Central Management Services/Illinois Human Rights Comm'n v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 310, 313-14, 943 N.E.2d 1150, 1154 (2010).

¶ 17    Plaintiff maintains coverage of Avastin was required by section 6.4 of the Group Insurance Act (5 ILCS 375/6.4 (West 2010)). That section provides as follows:

"If the program of health benefits provides coverage for prescribed drugs approved by the [FDA] for the treatment of certain types of cancer, it may not exclude coverage of any drug on the basis that the drug has been prescribed for the treatment of a type of cancer for which the drug has not been approved by the [FDA]. The drug, however, must be approved by the [FDA] and must be recognized for the treatment of the specific type of

cancer for which the drug has been prescribed in any one of the following established reference compendia:

> (a) the American Hospital Formulary Service Drug Information;
>
> (b) National Comprehensive Cancer Network's Drugs & Biologics Compendium;
>
> (c) Thomson Micromedex's Drug Dex;
>
> (d) Elsevier Gold Standard's Clinical Pharmacology; or
>
> (e) other authoritative compendia as identified from time to time by the Federal Secretary of Health and Human Services; or
>
> if not in the compendia, *recommended for that particular type of cancer in formal clinical studies, the results of which have been published in at least two peer reviewed professional medical journals published in the United States or Great Britain*." (Emphasis added.) 5 ILCS 375/6.4 (West 2010).

¶ 18    "The primary rule of statutory interpretation and construction *** is to ascertain and effectuate the true intent and meaning of the legislature." *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 16, 965 N.E.2d 1103. "In interpreting a statute, a court must give the legislative language its plain and ordinary meaning." *Wisnasky-Bettorf*, 2012 IL 111253, ¶ 16, 965 N.E.2d 1103. "If the language of the statute is plain, clear, and unambiguous, and if the legislative intent can be ascertained therefrom, it must prevail and will be given effect by the courts without resorting to other aids for construction." *Wisnasky-Bettorf*, 2012 IL 111253, ¶ 16, 965 N.E.2d 1103.

¶ 19    Relevant to this appeal, and giving the legislative language its plain and ordinary meaning, section 6.4 provides that, where the FDA has approved the use of a drug to treat certain types of cancer, a state-sponsored health benefits plan may not exclude the drug from coverage when it is prescribed for "off-label" treatment, *i.e.*, to treat a type of cancer for which it has not been approved by the FDA. 5 ILCS 375/6.4 (West 2010). However, section 6.4 contains express conditions for its application. Specifically, the drug at issue must be either (1) recognized for the treatment of the unapproved cancer in an established reference compendia or (2) "recommended" for the unapproved cancer "in formal clinical studies, the results of which have been published in at least two peer reviewed professional medical journals." 5 ILCS 375/6.4 (West 2010). "Recommend" is defined as "to present as worthy of acceptance or trial" or "to endorse as fit, worthy, or competent." Webster's Ninth New Collegiate Dictionary 984 (1988).

¶ 20    Here, the parties agree that Avastin has been approved by the FDA to treat some cancers but not melanoma. Neither on appeal nor in the underlying proceedings has plaintiff argued that Avastin is "recognized" for the treatment of metastatic melanoma in an "established reference compendia." Instead, she references a handful of clinical studies which evaluated the use of Avastin to treat melanoma. Notably, plaintiff sets forth no argument in her brief to show how these particular studies meet section 6.4's specific requirements.

¶ 21    Plaintiff cites the "Gonzalez Study," which involved 12 subjects and was not "a formal clinical trial." Results of that study suggested Avastin "in combination with weekly paclitaxel [was] active and well tolerated" in patients with metastatic melanoma but

"[b]roader investigation *** [was] warranted." Plaintiff also cites what the parties refer to as the "Perez Study," a phase II study which concluded that "[t]he combination of paclitaxel, carboplatin and [Avastin] appear[ed] to be well tolerated and clinically active in patients with stage IV melanoma" but "[f]urther study [was] necessary to determine the relative value of [Avastin] in combination with carboplatin and paclitaxel." A third study cited by plaintiff, concerning the treatment of melanoma with Avastin in combination with a drug not prescribed for Daniel, found Avastin "was well tolerated in patients with metastatic melanoma but had low activity" and concluded "[t]he ability of [Avastin] to promote disease stabilization *** deserves further investigation." Plaintiff cites only two additional studies, both of which were published after CMS's September 2009 final decision and which also concluded further research into the drug was warranted.

¶ 22        Again, section 6.4 clearly required plaintiff to show Avastin was "recommended" for the treatment of melanoma "in formal clinical studies, the results of which have been published in at least two peer reviewed professional medical journals." 5 ILCS 375/6.4 (West 2010). CMS determined plaintiff's submissions fell short of section 6.4's requirements and we find no error in that decision. In particular, none of the materials plaintiff relies upon endorsed Avastin as acceptable, fit, worthy, or competent treatment for melanoma. Instead, those materials show that, while the use of Avastin in treating melanoma is promising, further investigation and broader study into the drug in relation to melanoma is necessary. Section 6.4 does not require coverage of Avastin under Daniel's health plan.

¶ 23        Plaintiff also argues Daniel's state-sponsored health plan covered his treatment with Avastin because the drug was "medically necessary" to treat his melanoma. She contends Avastin falls within the plan's definition of "medically necessary" and not within the plan's exclusions for "investigative" or "experimental" treatment. CMS determined Avastin was not covered by Daniel's health plan because its use to treat melanoma was "investigative" or "experimental." The record supports CMS's finding.

¶ 24        As argued by plaintiff, Daniel's health benefits plan covered charges required in connection with "medically necessary" treatment of an illness or injury. The plan defined "medically necessary" as follows:

> "[H]ealth care services, supplies[,] or treatment that are provided or ordered by a contracted physician, are approved under the Medical Management program as required, are appropriate and consistent with the diagnosis and which, in accordance with generally accepted medical standards, could not have been omitted without adversely affecting the patient's condition or the quality of medical care rendered."

However, the plan also contained a list of "exclusions and limitations" under which "[e]xperimental, obsolete[,] or investigative procedures, services, or supplies" were excluded from the plan's coverage. Neither "experimental" nor "investigative" is defined by Daniel's health plan. "Where a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436, 930 N.E.2d 999, 1005 (2010).

¶ 25        The term "experiment" is defined as a "test" or "trial," "a tentative procedure or policy," and "an operation carried out under controlled conditions in order to discover an unknown

effect or law." Webster's Ninth New Collegiate Dictionary 437 (1988). Further, "investigate" means "to observe or study by close examination and systematic inquiry." Webster's Ninth New Collegiate Dictionary 636 (1988).

¶ 26    Here, although Dr. Linnette, Daniels' treating oncologist, opined Avastin was "medically necessary" to treat Daniel's condition, the information relied upon by both Dr. Linette and plaintiff shows the use of Avastin for treatment of melanoma was in the process of being studied and examined. Avastin had not been approved by the FDA to treat melanoma, accepted as the medical standard of care in treating the disease, recognized in reference compendia, or recommended by clinical studies contained in peer-reviewed medical journals. The materials submitted by plaintiff consistently stated the need for further study into the use of the drug to treat advanced melanoma. CMS's finding that Avastin was "investigational" or "experimental" and not covered by Daniel's health plan was supported by the record and not against the manifest weight of the evidence.

¶ 27    On appeal, plaintiff next contends that Daniel was denied due process during the administrative proceedings to resolve his claim because CMS conducted no hearing.

> "Under the constitutions of the United States and Illinois, the State may not 'deprive any person of life, liberty, or property, without due process of law.' U.S. Const., amend. XIV; see also Ill. Const. 1970, art. I, § 2. 'The core of due process is the right to notice and a meaningful opportunity to be heard'; no person may be deprived of a protected interest by an administrative adjudication of rights unless these safeguards are provided. [Citation.]" *World Painting Co. v. Costigan*, 2012 IL App (4th) 110869, ¶ 14, 967 N.E.2d 485.

"[D]ue process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92, 606 N.E.2d 1111, 1119 (1992). In an administrative context, procedural due process does not necessarily require a proceeding that is in the nature of a judicial proceeding. *Abrahamson*, 153 Ill. 2d at 92-93, 606 N.E.2d at 1119. Further, "[d]ue process does not necessitate a hearing in every case of government impairment of a private interest." *Key Outdoor, Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 321, 750 N.E.2d 709, 713 (2001).

¶ 28    A due process analysis must begin with a determination of whether a protectible interest in life, liberty, or property exists because if one is not present, no process is due. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 12, 963 N.E.2d 918. Although plaintiff acknowledges this concept, she makes no argument on appeal to support the existence of any such interest in the use of Avastin as treatment for Daniel's condition. Moreover, the record reflects plaintiff was given notice and an opportunity to be heard before CMS rendered its final decision. Specifically, plaintiff had the opportunity to present any evidence to support her claim, particularly after the case was remanded by the circuit court.

¶ 29    Plaintiff further argues CMS violated the Illinois Administrative Procedure Act (5 ILCS 100/1-1 to 1-90 (West 2010)). The Administrative Procedure Act requires that all agencies "adopt rules establishing procedures for contested case hearings." 5 ILCS 100/10-5 (West

2010). A "contested case" is defined to mean "an adjudicatory proceeding *** in which the individual legal rights, duties, or privileges of a party are *required by law* to be determined by an agency only after an opportunity for a hearing." (Emphasis added.) 5 ILCS 100/1-30 (West 2010). Plaintiff fails to reference legal authority that requires CMS to conduct a hearing when reviewing the denial of coverage for medical expenses. The Group Insurance Act contains no such requirement. Plaintiff has failed to show her entitlement to a judicial-type hearing before CMS.

¶ 30    Finally, on appeal, plaintiff argues she was entitled to declaratory relief against all defendants. She seeks a declaration (1) of whether defendants "are required to provide notice and due process hearings before denying administrative appeals of 'medically necessary' health care claims contested by state employees"; (2) of whether the nonstate defendants are required to follow the contract provisions of the state-sponsored health benefits program; (3) that defendants are required to identify and make available for cross-examination hired "experts"; (4) of "whether this cause, and similar causes, should have been remanded to [CMS] to determine the narrow legal issues of statutory interpretation and contract exclusion"; (5) of whether nonstate defendants were "required to approve coverage for 'off label' prescription of an FDA approved cancer drug if found to be 'medically necessary' "; and (6) of whether CMS was required to pay for Daniel's Avastin treatments.

¶ 31    The Code of Civil Procedure provides as follows with respect to declaratory judgments:

"The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2-701(a) (West 2010).

However, CMS's final decisions under the Group Insurance Act are subject to judicial review under the Administrative Review Law. 5 ILCS 375/15(h) (West 2010). As such, a claim brought pursuant to the Administrative Review was plaintiff's sole means of challenging CMS's decision to uphold Healthlink's denial of coverage for Avastin. 735 ILCS 5/3-102 (West 2010) ("In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be employed.").

¶ 32    Moreover, plaintiff seeks declaratory relief on the same basis that she sought relief under the Administrative Review Law. For the reasons discussed, her claims are without merit. Plaintiff is not entitled to declaratory relief against defendants.

¶ 33    For the reasons stated, we affirm the circuit court's judgment.

¶ 34    Affirmed.

¶ 35    JUSTICE APPLETON, specially concurring.

¶ 36    While I fully concur in the disposition of this appeal set forth by the majority, I write

separately to raise a concern regarding the actions of the appellees and to comment on the underlying policy of the State of Illinois that gives rise to the issues brought forth by the appellants.

¶ 37    From the time the decedent's cancer progressed to stage IV melanoma and the determination by the nonstate defendants in September 2008 that the expense for the provision of Avastin would not be covered through the decedent's health-care plan, over a year had passed. While it is uncontroverted that both the insurance provider and CMS allowed for the appeal of coverage decisions made by them, for a cancer patient and his family to endure the uncertainty of whether or not possible life extending treatment can be provided is, to put it bluntly, unconscionable.

¶ 38    As to the ultimate decisions made by the nonstate and state defendants, I would note that while it was in accord with the health-care plan in effect at the time, it is emblematic of the current state of health care. The State of Illinois determines each year how much it can spend for employee health plans, and it is the amount of dollars each year that are made available for that purpose which defines the extent of coverage available to the various plan participants. If the state wished to spend more money, it could make available a wider range of treatment options such as newer drugs in the trial or experimental phase of their progress to the marketplace. Those newer drugs are, of course, more expensive because the makers of them and the federal government require significant research, development, and testing. Because the state has determined it can afford to spend only so much for employee health coverage, the choices for coverage are limited.